No. 18-2759

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

DEON PATRICK,

Plaintiff-Appellee,

v.

CITY OF CHICAGO, ANTHONY VILLARDITA, THOMAS JOHNSON, RICK ABREU, TERRY O'CONNOR, SEAN GLINSKI, and MICHAEL BERTI,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 14 cv 3658
The Honorable Ronald A. Guzman, Judge Presiding

# SEPARATE APPENDIX OF DEFENDANTS-APPELLANTS

EDWARD N. SISKEL
Corporation Counsel
of the City of Chicago
BENNA RUTH SOLOMON
Deputy Corporation Counsel
MYRIAM ZRECZNY KASPER
Chief Assistant Corporation Counsel
30 N. LaSalle Street, Suite 800
Chicago, Illinois 60602
(312) 744-7764

RUTH F. MASTERS
MASTERSLAW
7061 W. North Avenue, # 296
Oak Park, Illinois 60302
(708) 445-8031
Special Assistant Corporation Counsel

**SEPARATE APPENDIX TABLE OF CONTENTS**

February 21, 2017 Certificate of Innocence Motion In Limine Ruling……. SA1-SA14

April 6, 2017 Fabrication Jury Instruction Ruling..……………………………SA15-SA29

April 7, 2017 Fabrication Jury Instruction Ruling…………………………...SA30-SA48

Defendants' Proposed Fabrication Instruction……………………...…………………SA49

Given Fabrication Instruction…………………………………………………….…SA50

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEON PATRICK, Plaintiff, -vs- CITY OF CHICAGO, et al., Defendants. | Case No. 14 C 3658<br>Chicago, Illinois<br>February 21, 2017<br>1:21 o'clock p.m. |

TRANSCRIPT OF PROCEEDINGS - PRETRIAL CONFERENCE
BEFORE THE HONORABLE RONALD A. GUZMAN

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | VALOREM LAW GROUP LLC<br>BY: MR. STUART JAY CHANEN<br>MS. NICOLE NEHAMA AUERBACH<br>35 East Wacker Drive, Suite 3000<br>Chicago, Illinois 60601 |
| For Defendant City of Chicago: | DYKEMA GOSSETT PLLC<br>BY: MR. DANIEL MATTHEW NOLAND<br>MR. TERRENCE MICHAEL BURNS<br>10 South Wacker Drive, Suite 2300<br>Chicago, Illinois 60606 |
| For the individual defendant police officers: | BORKAN & SCAHILL, LTD.<br>BY: MR. TIMOTHY P. SCAHILL<br>MS. MISHA ITCHHAPORIA<br>20 South Clark Street, Suite 1700<br>Chicago, Illinois 60603 |

defendant officers, obviously there is a motion with respect to the certificate of innocence that we filed which is separate and apart from the vacating of the conviction we actually had put in the statement of uncontested facts. Obviously Mr. Patrick can get into the fact that his criminal charges were vacated. That's an element of his malicious prosecution claim. There is no way to get around that, of course. If they're saying they're not going to say exonerated, that's fine, too. But the certificate of innocence is a completely different issue from our point of view. So I'm not sure if your Honor wants to address that now --

THE COURT: Sure.

MR. SCAHILL: -- as a separate motion or --

THE COURT: Well, it's the same thing. It's a separate motion, but it's all going to the same point.

MR. SCAHILL: Sure. So our -- and this is defendant's motion in limine No. 3, which actually related to not only the certificate of innocence ordered Mr. Patrick but also the ones to Mr. Phillips, Mr. Gardner and Mr. Taylor which related, but different issues, in our estimation. But the way that we've looked at this, and I know that there have been one or two other courts who have looked at the certificates of innocence, and, you know, *Kluppelberg* case, obviously and the *Menes* (phonetic) case have allowed those

into evidence, which has never gone up to the Seventh Circuit. We don't agree with the rationale in those decisions, but -- and the way that we look at that in this case is, when you have a malicious prosecution claim, you have to prove favorable termination. And obviously that's, you know, one of the arguments that's been made with respect to these certificates. But it's completely separate and distinct procedure, both before a different court, and that's not determination of the criminal proceedings. And there have been -- there has been a case that came down from the Illinois Appellate Court with respect to the interpretation of that statute which, although it didn't expressly hold it has indicated that this likely was not the intent of the statute is to allow this to be used in 1983 litigation.

But, again, this is a -- this is an issue that's come before a handful of courts over in the district court here. It has never gone up to the Seventh Circuit. And we don't think it's necessary to have that because the vacating of the conviction is coming in. And, you know, you also look at the fact that none of the people who have been sued in this case ever had any opportunity to be heard on those issues. In fact, statutorily they're not even allowed to be heard on those issues, nor was there ever any evidentiary hearing that resulted in the award of the certificate of innocence. So we feel it's extremely prejudicial,

particularly because we were given no opportunity to be heard on any of this. And the plaintiff is free to assert his innocence and to introduce evidence until his heart is content about his factual innocence. And he will have the termination of his criminal proceedings through the vacating of his conviction, which is all he needs for his malicious prosecution claim.

THE COURT: You think so?

MR. SCAHILL: Yes. I mean, he -- Mr. Patrick has not only himself, but he is going to be calling presumably the other individuals, most of them, anyway, who were his criminal co-defendants. They've all in some way or another recanted their statements, and so on, so forth.

THE COURT: My question is, do you think the discharge of the dismissal of the charges against him is all he needs to establish to make out a prima facie case of malicious prosecution?

MR. SCAHILL: No. No, no, no. That's not what I'm saying. Certainly you have to have the favorable termination.

THE COURT: Right. And that means favorable in what way?

MR. SCAHILL: It has to be indicative of innocence.

THE COURT: Ah, there we go. Yes.

MR. SCAHILL: Of course.

THE COURT: We're talking about a certificate of innocence; right?

MR. SCAHILL: In a separate proceeding, after the termination. See, this is where I draw the distinction. And I know that this -- this point of view is not the one that has been adopted, but I'm going to make it nonetheless. When you have a -- when you are talking about malicious prosecution, it's a favorable termination of the criminal proceedings in a manner indicative of innocence. Okay? Determination of Mr. Patrick's criminal proceeding was the vacating of his conviction. The certificate of innocence is a separate civil proceeding which makes him eligible for compensation through the court of claims. Okay? It's not -- that's not the termination of his criminal proceeding. It's a completely separate proceeding and it's one, in this particular case, it's not the case in all of them, but in this particular case, was done in quite a summary fashion. I mean, there was a petition that was filed. There was no position taken on it by the state's attorney's office, and it was granted. There was no evidentiary hearing. And, of course, the individuals who now it's being held against in this civil case, not only were not permitted to be heard on it, the statute does not even allow them to be heard on it.

THE COURT: But they never are; right? I mean --

MR. SCAHILL: That's true.

THE COURT: -- when the state's attorney's office nolle proses a case and says, we don't think we have enough evidence to prove this man is guilty, police officers don't have anything to do say about it. They never do.

MR. SCAHILL: That's true. And that's why the case from the Illinois Appellate Court last year, the Chapman case was sort of an interpretation of that. I don't know if your Honor is intimately familiar with the facts of the case, but this was the Daley Center rape from 2002. And the person who -- who was seeking to actually intervene and vacate the petition of innocence was the woman who says that she was raped by the individual who is later given the certificate of innocence. And the basis for her standing in that case was that I've now been sued. I've been sued in a federal lawsuit now. And this is potentially, potentially, going to be held against me. That case has not gone to trial yet. So we don't know exactly where the court is going to come down on that evidentiary issue. But, you know, the Illinois Appellate Court had some language in the opinion where they said, look, this was -- you know, this wasn't really the purpose of the statute, you know. So, I mean, again, it's -- we don't know exactly where the Illinois Supreme Court is going to come down on it, nor the Seventh Circuit. But this whole issue is --

THE COURT: I'm not really sure that -- that the

purpose behind the statute is the relevant consideration before us. What the plaintiff has to show is, as you indicated, not only that his case was terminated favorably, but that it was terminated in a manner indicating innocence. So the question is, what pieces of evidence out there are there that, when the state's attorney's office nolle prossed this case, it's because they thought the defendant was innocent, not because witnesses had died, they couldn't prove the case up. Not because evidence had been lost. Not because for political reasons. But because they believed the defendant was innocent. This seems to me, regardless of what the statute says, or its purpose, an opportunity for the state's attorney's office to have stepped up and said: No, we don't think he is innocent. He shouldn't get a certificate of innocence. And instead of doing that, they sat on their hands. That's evidence. Circumstantial evidence, but it's evidence. And it goes to an essential element of his malicious prosecution claim. It comes in.

MR. SCAHILL: It's evidence -- and I respect the ruling, your Honor. But it's evidence -- when you are saying the state's attorney sat on their hands, the state's attorney's office, they're not parties in this case.

THE COURT: They can be.

MR. SCAHILL: Certainly the evidence of there what --

THE COURT: They can be.
MR. SCAHILL: But if being held against people who were not in that thought process.
THE COURT: Always the case.
MR. SCAHILL: So --
THE COURT: Do you know where the state nolle prossed in the criminal court building and the prosecutor says: We don't think we can prove this case. We don't care what the police officers say. That's always the case. To me, that's not an argument for not allowing it. The question is, at the point in time of the prosecution, which is the government's -- the state's attorney's responsibility, did they choose to dismiss this action in a manner consistent with innocence? And I think the fact that they did not object to a certificate of innocence when they could have is some evidence of that. I'm going to allow it in.
MR. SCAHILL: So just a point of clarification on that, just so I know where to go during trial. This issue came up, I believe, in one of the cases, in the *Kluppelberg* case before Judge Lefkow. And I just want to make sure, when we're talking about this being evidence in the case, obviously the statute makes it non-conclusive evidence. But also that the defendants are given the opportunity to, you know, essentially contest the underlying basis on which this was obtained. In other words, the filing that was made by

Mr. Patrick with the evidence, and to say: Look, the evidence that you have presented to -- in favor of this is not -- it's not valid. I mean, again, this seems to me to be sort of rather obvious that this is coming in, but I just want to make sure we're not running afoul of any rulings of your Honor by actually introducing evidence on the procedure and the evidence that was submitted in order to obtain that order.

THE COURT: I hadn't considered that. What's your response?

MS. AUERBACH: Well, Judge, I believe that they're referring to their theory as they espoused in their trial brief, that basically everything that has happened, the vacation, the dismissal of the charges, the certificate of innocence was all a recently fabricated ruse, a conspiracy, if you will, among the underlying co-defendants, including Mr. Patrick. And if that's what you're referring to, and that's your theory at trial, I suppose that, if the certificate of innocence is coming in, that they should be allowed to argue that the chief judge was duped, that the state's attorney's office was duped, that Judge Alonso was duped, and that everybody who touched this.

THE COURT: Well, let me be clear. I mean, if anything comes in it's the fact that it was opposed by you, not the fact that these are the reasons we opposed it.

MR. SCAHILL: No, no, no, I'm actually arguing the contrary. So the basic idea is that there is a petition that's filed by Mr. Patrick. It's a verified petition saying, this is why I should be declared innocent and here are the reasons. And, in fact, as Mr. Chanen pointed out in one of his briefs, there was exhibits and affidavits and all sorts of other things attached setting forth all of the reasons why this is should be done. It was similar to what was submitted during the petition to vacate the conviction. And what our -- one of our theories is, with respect to that evidence is that, throughout the course of this case, we've proven that the things that are in there, they're just not true. And there are things that have been proven to be completely false. Affidavits that are false, testimony that has been recanted, so on, so forth.

THE COURT: Tell me where this goes. Where are you going with this? What is it you want to do?

MR. SCAHILL: Just because the issue is to attack the petition and the basis for the petition, is to say, look, this is what you got, but this is how you got it. And the evidence has now been essentially debunked, largely. And that was the basis, and, so, you know, it's -- the thing is not credible.

THE COURT: What is it you want to introduce at the trial?

MR. SCAHILL: So --

THE COURT: If and when the rubber meets the road.

MR. SCAHILL: So I would like to introduce -- I mean, this is going to be, I would imagine, coming in on multiple bases anyway. But there were affidavits that were produced in support of this petition by Mr. Patrick by numerous individuals, including his criminal co-defendants and other witnesses that have statements in them that just -- about the incident and about the confessions that have been proven just not to be true, just factually to be false. We have issues with respect to witnesses having been intimidated. We have, you know, witnesses who have had advantage taken of them and have recanted affidavits, so on, so forth.

THE COURT: So you want to introduce all that evidence?

MR. SCAHILL: Yeah, absolutely.

MS. AUERBACH: Judge, assuming that this does not go on as you have said, sort of this tangential cumulative evidence, or somewhere --

THE COURT: That's a big assumption at this point. There appears to be a very big assumption at this point. Counsel is saying, I have a slew of evidence to show that the basis for the certificate is faulty.

MS. AUERBACH: Their entire theory of the case is

that this man committed the crimes in question. They will retry this case and they will do it in whatever manner that they can. We don't have an objection if they have a basis to argue that the certificate of innocence was procured through deception.

THE COURT: Well, I mean, the question that has to be answered, and I don't have the facts to answer it is, does allowing the certificate of innocence to come in open up other areas of evidence that they can bring in that wouldn't otherwise be admitted during the course of the trial. Do you anticipate that?

MR. SCAHILL: I don't think so, Judge. I mean, because what we have here, the evidence that I've been referring to, these are four people that are listed on, by and large, both parties' witness lists. I mean, these are just people who are going to be testifying anyway and have taken positions in support of Mr. Patrick. So this is stuff that's coming in, as I referred to earlier, probably through other means anyway because there are sworn affidavits of impeachment. So we're not re-inventing the wheel here at all.

THE COURT: But to the extent that's true, I mean, we're talking about a non-issue. To the extent that's true, this does not mean that there is going to be a prolonging the trial, confusing the jury or any kind of satellite

litigation. And the fact that the evidence you're talking about is going to come in anyhow, then what's there for me to decide? Sure, you can argue that the same evidence rebuts the evidence that has been placed in support of the certificate for innocence, which I assume is the same evidence that's going to be adduced on behalf of the plaintiff during the trial; is that right?

MS. AUERBACH: That's right, your Honor.

THE COURT: Not an issue, then.

MR. SCAHILL: Sure. I just wanted to clarify it, Judge.

MS. AUERBACH: Judge, the one thing that I would want to clarify here is that the state's attorney's office took the position that there was a deliberative process privilege that precluded anybody from inquiring into the basis for the decision to not vacate -- or to vacate and to not oppose the certificate of innocence. I assume that they are -- that the defendants are not suggesting that they can put on evidence at this point of what the state's attorney was thinking or anything else of that nature. That privilege was applied as to all of the parties. And as long as they're not going to be putting on evidence of something that we were not allowed to get at in discovery, we don't have any problem with them attacking the nature of our evidence that he is innocent.

MR. SCAHILL: We're not introducing evidence of that.

THE COURT: Are you going to introduce any of that? That state's attorney's office going to introduce the thought processes of the people who made the determination to nolle pros the case and to take no position on the certificate of innocence?

MS. MEADOR: No. Judge, our defendants are in the same position as the plaintiffs and the other defendants. This was a position taken by the state's attorney's office with separate counsel from us. So we are in the same position. And we have -- we will not be presenting any additional evidence, any separate evidence.

THE COURT: Does that satisfy you?

MS. AUERBACH: Yes. Thank you.

THE COURT: Okay.

MR. SCAHILL: Judge, there was the issue of the other individuals' --

THE COURT: There was.

MR. SCAHILL: -- certificates of innocence which we have not addressed, which, if your Honor would like to address it now, I would be happy to start.

THE COURT: Sure.

MR. SCAHILL: So what we've been talking about with respect to Mr. Patrick, of course, is this issue of his

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEON PATRICK, | ) | |
| Plaintiff, | ) | |
| -vs- | ) | Case No. 14 C 3658 |
| | ) | Chicago, Illinois |
| CITY OF CHICAGO, et al., | ) | April 6, 2017 |
| | ) | 9:30 o'clock a.m. |
| Defendants. | ) | |

VOLUME 18A
TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE RONALD A. GUZMAN, and a jury

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | VALOREM LAW GROUP LLC<br>BY: MR. STUART JAY CHANEN<br>MS. NICOLE NEHAMA AUERBACH<br>218 N. Jefferson Street, Suite 300<br>Chicago, Illinois 60661 |
| For Defendant City of Chicago: | DYKEMA GOSSETT PLLC<br>BY: MR. DANIEL MATTHEW NOLAND<br>10 South Wacker Drive, Suite 2300<br>Chicago, Illinois 60606 |
| For the individual defendant police officers: | BORKAN & SCAHILL, LTD.<br>BY: MR. TIMOTHY P. SCAHILL<br>MS. MISHA ITCHHAPORIA<br>MR. STEVEN BLAIR BORKAN<br>20 South Clark Street, Suite 1700<br>Chicago, Illinois 60603 |

Circuit pattern instruction came out that -- where the vast majority of the law is going towards liberty in some way. So that would need to be -- I don't mind the format or the elements set forth in the version they presented. I'm fine with theirs instead of ours in terms of format. But that issue would have to be corrected, is our position.

MR. SCAHILL: We talked about this a little bit at the pretrial and my view on the law and where it's going. And I will admit that Seventh Circuit cases on this are still somewhat all over the place.

MR. BORKAN: They're influx.

MR. SCAHILL: But my view on this deprived of liberty in some way or used at criminal trial, the distinction that I have seen in the cases is that a deprived of liberty in some way applies to cases where somebody is held and never goes to trial. They're pretrial detention cases. Whereas, cases where there is an actual trial, conviction, so on, so forth, it would be introduced at the criminal trial. And the reason for that is, among other things, goes to causality. If -- for example, Mr. Patrick could have his -- in theory, could have his liberty deprived by other people's confessions being taken into account by the state's attorney and being charged by the grand jury and then sitting in the Cook County jail until his trial and could potentially cause that deprivation of liberty. However, from

the lion's share of the deprivation of liberty that we're talking about, which is the criminal trial, in order to find that the fabricated evidence actually caused that deprivation of liberty it would have to have been used against him by definition because what caused him to be deprived of the liberty was the fact that he was convicted by a jury who heard certain evidence. They can't have deprived him of his liberty by considering things that they never sought. It's legally impossible for that to have occurred, so -- because they never considered it. In other words, let's say we're talking about Lewis Gardner, saying Lewis Gardner's confession was coerced. Okay. Perhaps that's taken into account by the state's attorney, or it's taken into account by the grand jury, and he has to sit in Cook County jail for a time as a result of that. But then he goes to trial. His jury never hears that evidence. It's never used against him, but he is then sentenced to the sentence of imprisonment that he had. But that couldn't possibly have caused that deprivation, it's impossible, because it was never considered. So that's my view on the law, and I believe that's the distinction that has been made in a lot of these cases. You will see that the pre -- the deprivation of liberty in some crime cases tend to be ones that aren't -- there is no criminal trial.

MR. CHANEN: Judge, I --

THE COURT: Well, can I ask what difference any of that makes in this trial?

MR. SCAHILL: Because if we're talking about damages, for example, let's say the jury believes that some of the other individuals' confessions were coerced and that was used to deprive Mr. Patrick of his liberty in the sense of being put in the Cook County jail until his criminal trial until March of 1995. The jury would only be able to award damages for that period of deprivation of liberty because that is the only period which would have been proximately caused by the fabrication of that evidence. From March 1995, all the way up to January of 2014, the fabrication of any of those other confessions or any of the Daniel Taylor stuff or any of this other stuff that we've talked about in the course of the trial cannot possibly have deprived him of liberty because it was never used against him. So that -- that's the distinction, is a huge distinction in damages and what was actually caused by the alleged wrongdoing.

THE COURT: How could that happen in this case?

MR. SCAHILL: Well, we saw that -- I mean, that's the way that it played out because there were these other -- there were these other confessions. And obviously the confessions is taken into account in some regard but not at the trial.

THE COURT: So you think there is a rational way

for the jury to find that Deon Patrick's confession was coerced or -- was not coerced but the others were?

MR. SCAHILL: Well, I think that -- well, the circumstances under which the confessions were taken are all different in many, many ways. So people could have thought that somebody's story is compelling and somebody else's story is not particularly compelling, but -- and believe that perhaps that person's, you know, will was overcome or whatever, you know, happened to them. I'm, you know, it's tough to sort of figure out what's going to go through a jury's mind, but, you know, those are potential confusions that the jury could come to. And as far as the dollars-and-cents issue, there is a very big difference between those two things for the purposes of this case, particularly because we've spent weeks and weeks talking about the circumstances of other people's confessions that never are taken into account.

THE COURT: I think that if you feel there is a rational way for the jury to find that, you can argue that and tell them the damages should only be limited to. If you find that all of these other confessions were confessed, or some of these others, or one of these others, but not his, then you can limit your damages to the amount of time he spent in jail because of that one confession, which was never used at trial. So anything past that doesn't work. You can

argue that.

MR. NOWINSKI: But, Judge, if I may? In this instruction, we're talking about the fabrication of evidence, not the coercion of it. And so I think what it is is what fabricated evidence are we talking about? And so --

THE COURT: All of it. Everything that -- everything that the facts could lead the jury to conclude was fabricated evidence.

MR. NOWINSKI: I don't disagree that the jury can decide what was or was not fabricated, but the -- I think the point is that the fabricated evidence has to be used at his trial, and those pieces of evidence were not used at his trial.

MR. CHANEN: Judge, you addressed this very directly in your summary judgment.

THE COURT: Yeah, but I didn't address it in this regard and with respect to damages. They're bringing up something that we didn't touch on in the summary judgment. I -- I agree that for summary judgment purposes all they have to show is that the -- some fabricated evidence caused him to be -- lose his liberty in some way. The question becomes, now we have different pieces of fabricated evidence. If the jury finds Piece No. 1 was fabricated, all the others weren't, and the only effect of Piece No. 1 was to incarcerate him from the time he was arrested until the time

he went to trial because it was never used against him at trial, okay, why should the damages not be limited to that?

MR. CHANEN: Well, I don't --

THE COURT: So here is your answer to that. Your answer to that, what we're talking about here is a tort, and we're talking about proximately caused damages. And that's an issue for the jury to determine. We can give them an instruction on proximate cause. The instructions we've given them so far include a proximate causation. We can give them an instruction on proximate cause and you folks argue it.

MR. CHANEN: Okay.

MR. SCAHILL: So the argument -- the -- if I understand this correctly now, if we're looking at the elements that are in the proposed instruction, which I think Mr. Chanen said in theory he was fine with, would be something along the lines of --

THE COURT: Just for the record, which one are you looking at now?

MR. SCAHILL: I'm looking at Defendants' Exhibit 32.

THE COURT: Defendants' Exhibit 30?

MR. SCAHILL: I'm sorry, Instruction 32. So it's behind the plaintiff's fabrication of evidence instruction in Tab 26, Judge.

THE COURT: Yeah, here it is. Okay.

MR. SCAHILL: Okay. So this would be something along the lines of: The defendant you are considering knowingly fabricated evidence that was used to deprive the plaintiff of his liberty -- or -- that proximately caused the plaintiff to be deprived of his liberty in some way. And then we would need a proximate cause instruction as well because that's not contained within here, but obviously that can be obtained from numerous sources.

MR. BORKAN: Short form, proximate cause. We'll just go ahead and submit it.

THE COURT: Let's just see. I'm looking at -- I think the fourth element of the proposed -- the Court's proposed instruction on coerced confession is that these acts proximately caused damages to the plaintiff. So proximate cause is already there. When you use that phrase you really should define it for the jury because they don't know what proximate cause is.

So coming back to the instruction on fabrication of evidence.

MR. CHANEN: Ms. Auerbach made a good suggestion. Instead of using proximate cause, Judge, you could say in each of those places it was foreseeable to defendants that --

THE COURT: No, let's not do that. Let's just use proximate cause, and then let's pick out the proximate cause instruction separately.

MR. CHANEN: Okay.

THE COURT: All right. I mean, I understand the rationale behind that, but when we're talking about elements instructions, I'd like to leave it with the elements, and then we can define things further on down the line.

MR. CHANEN: Okay.

THE COURT: So when I see Plaintiff's No. 17, To succeed on this claim against any of the defendants, plaintiff must prove the following things by a preponderance of the evidence: One, the officer defendants or prosecutor defendant, however we hash that out, fabricated evidence they knew to be false. And, two, the evidence -- that evidence is used to deprive plaintiff of his liberty in some way. If you find that fabricated evidence was used to deprive the plaintiff of his liberty in some way, you need not find that the evidence was admitted against the plaintiff in his criminal trial. Instead, you must determine by a preponderance of the evidence whether the creation of the fabricated evidence proximately caused plaintiff to be deprived of his liberty.

MR. SCAHILL: May I comment on that, Judge?

THE COURT: What would you add to that?

MR. SCAHILL: Well, I wouldn't -- I just wouldn't put that. I would just put that the -- going along with the proposed pattern instruction which we have proposed is to

say, instead of saying used at his criminal trial, you would say as Element 1, and this would mirror, actually, the coerced confession claim, is to say: The defendant you are considering knowingly fabricated evidence that was used to deprive plaintiff of his liberty in some way. And then they actually left out an element in their prima facie elements, but then, if you use this paragraph?

MR. BORKAN: Which paragraph?

MR. SCAHILL: The paragraph that you just read, Judge. The paragraph that begins on Plaintiff's 17 of, "To find that fabricated evidence was used." If you put that in there, you're calling attention to the element that you just said we would be able to argue in closing that none -- he shouldn't be awarded damages for this because these things weren't even used against him.

THE COURT: Okay. So let's finish your proposed instruction. To succeed on this claim, plaintiff must prove each of the following things by a preponderance of the evidence: The defendant you are considering knowingly fabricated evidence that was -- how would you finish that?

MR. SCAHILL: Used to deprive plaintiff of his liberty in some way.

THE COURT: And then what else?

MR. SCAHILL: Two, the evidence was material.

THE COURT: That doesn't go in there.

MR. SCAHILL: That's one of the elements, Judge.

THE COURT: I don't think so.

MR. SCAHILL: Of fabricated evidence?

THE COURT: Uh-huh, yeah.

MR. SCAHILL: That is one of the prima facie elements of that claim.

THE COURT: I don't think it is. I think all they have to prove is it was fabricated and it caused him to be deprived of his liberty. By definition, if it caused him to be deprived of his liberty for purposes of his constitutional rights, it's material.

MR. SCAHILL: I think we're conflating two concepts. Materiality is definitely an element of a fabricated evidence claim because there has to be a reasonable probability --

THE COURT: Show me how immaterial evidence would cause him to lose his liberty. Give me an example and then tie it into this case.

MR. SCAHILL: Well, but you still have to define what that means. I mean, that's what the -- that's why there is that element that's in the proposed instruction of that there is a reasonable probability that the result would have been different if it was -- I think I mistakenly put disclosed because this is a Brady and fabrication are in the same instruction.

THE COURT: Yeah.

MR. SCAHILL: But it would be, had not been fabricated.

THE COURT: I think it -- I mean, I think it is Brady, and I think what they're doing is conflating Brady with the elements that we're looking at here.

MS. AUERBACH: Which makes sense.

THE COURT: I think for Brady clearly it has to be material evidence. I think the materiality aspect is taken care of in this case by the requirement that the evidence caused him to lose his freedom. If it causes him to lose his freedom, it's material for purposes of deprivation of his civil right. If it doesn't cause it, it's not material. It can't cause it if it's immaterial. By definition, that just can't happen.

MR. SCAHILL: Well, that may be so, but you still have -- I think -- you still have to define what that means as to what would result in the deprivation of liberty.

THE COURT: I'm pretty sure that the common layperson would know if something caused something else to happen. So given the evidence in this case, it has been pretty clear that what caused the plaintiff to be detained, charged and prosecuted was one or more of a combination of these fabricated evidence claims and the coerced -- and/or the coerced confession claim that they're claiming. I don't

think that that needs to be explained to the jury. I mean, I -- I see your point. You're saying that there has to be an explanation for the nexus, the connection between the fabricated evidence and the loss of freedom, and you would say that that's defined by materiality. I don't think it's necessary. I just don't. I think frankly that -- okay. I think it's a conflation of Brady.

MR. CHANEN: And then, your Honor, Element 3 would also come out because Element 3 has now just been merged into Element 1. So when you say: The defendant you are considering knowingly fabricated evidence that -- although you could have a freestanding proximate cause one there, we would be fine with that.

THE COURT: I think -- I think all of the tort -- all torts require that you prove damages. This is a tort, is what we're talking about. We can dress it up in constitutional terminology, but it's a tort.

MR. CHANEN: Okay. I'm fine.

MR. SCAHILL: Judge, Mr. Patterson just gave me -- the summary judgment ruling from your Honor has the elements of fabrication and materiality is in there and it's citing to the Petty (phonetic) case which --

MR. NOWINSKI: That wasn't his ruling.

MR. SCAHILL: Oh, I'm sorry. Right. Okay. No, strike that.

THE COURT: You're going to lose your eyesight reading from that little thing, you know that; right?

MR. SCAHILL: I think you're right. I usually have the bigger one, Judge. You made reference to it at the pretrial conference. The Petty case --

THE COURT: Wait until you get to be 45. You won't even be able to see that thing much less to write on it.

MS. AUERBACH: You're not 45?

MR. BORKAN: Another ten years for him, Judge.

MR. SCAHILL: I feel 45 after having been on trial for six weeks, but I am not 45 yet. But, anyway, we stand on our -- I believe materiality is an element, so I respectfully disagree and that's --

THE COURT: I'll think about it. I'll think about it. I just don't -- I mean, I looked at this issue before once upon a time, and -- yeah, see, you've got -- you've got language in the proposed instruction, the proposed pattern jury instruction includes both Brady language. It says plaintiff claims that defendant violated his right to a fair trial by -- brackets -- failing to disclose exculpatory and/or impeachment evidence. That relates to Brady materiality. I don't think in this case it applies. But your objection is on the record.

MR. SCAHILL: Okay.

MR. NOWINSKI: Judge, we would join in that

objection as well.

THE COURT: Excuse me?

MR. NOWINSKI: We would join in that objection as well.

THE COURT: All right. You can join.

MR. NOWINSKI: Thank you, Judge.

THE COURT: So we've got your proposed Element No. 1, and then we'll include Element No. 3, plaintiff was proximately -- or I think the way to put it is that the fabricated evidence proximately caused plaintiff's damages, or plaintiff to be damaged.

MR. CHANEN: And then, Judge, just to be clear, just because once you took out two, then obviously the first sentence underneath No. 3 would also come out, just as a matter of logistics.

THE COURT: Yeah. Yeah, the materiality comes out. And you have the "if you find" and "if on the other hand you find." Okay.

MR. CHANEN: Judge, would this be a good place to stop and bring the jury back in? They've been back since --

THE COURT: Yeah, let's do that. Good idea.

(Jury entered the courtroom.)

THE COURT: Welcome back, Ladies and Gentlemen. As promised, it's time for you to vote. I'm going to ask you to indicate whether you wish to come back tomorrow. My guess is

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEON PATRICK, Plaintiff, v. CITY OF CHICAGO, et al., Defendants. | ) | Case No. 14 C 3658<br>Chicago, Illinois<br>April 7, 2017<br>1:40 o'clock p.m. |

VOLUME 19
TRANSCRIPT OF PROCEEDINGS - TRIAL
BEFORE THE HONORABLE RONALD A. GUZMAN, and a jury

APPEARANCES:

For the Plaintiff: VALOREM LAW GROUP LLC
BY: MR. STUART JAY CHANEN
218 North Jefferson Street
Suite 300
Chicago, Illinois 60661

For Defendant City of Chicago: DYKEMA GOSSETT PLLC
BY: MR. DANIEL MATTHEW NOLAND
10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606

For the individuals defendant police officers: BORKAN & SCAHILL, LTD.
BY: MR. STEVEN BLAIR BORKAN
MS. MISHA ITCHHAPORIA
20 South Clark Street
Suite 1700
Chicago, Illinois 60603

For Defendants County of Cook, Martin Fogarty, and Joseph Magats: COOK COUNTY STATE'S ATTORNEY
BY: MR. THOMAS EDWARD NOWINSKI
500 Richard J. Daley Center
Chicago, Illinois 60602

MS. MARY M. HACKER, CSR, FCRR
Official Court Reporter
219 South Dearborn Street, Room 1212
Chicago, Illinois 60604
(312) 435-5564
Mary.hacker.csr@gmail.com

(The following proceedings were had in open court outside the presence of the jury:)

THE COURT: So you're the only case on the call, so court will come to order. Should we go through the, the latest set?

MR. BORKAN: Yes, Judge. By the way, good afternoon. Steve Borkan, Misha Itchhaporia, and Dan Noland on behalf of the officer defendants.

MR. NOWINSKI: Thomas Nowinski on behalf of all of the ASA defendants.

MR. CHANEN: Stuart Chanen on behalf of the plaintiff Deon Patrick.

THE COURT: Good afternoon everyone.

MR. BORKAN: So, Judge, what Miss Itchhaporia and Mr. Chanen have done is to the greatest extent possible worked through the instructions as discussed yesterday, made modifications to those where we could. There is still some work to do. There is a couple of matters that I think everyone is in agreement on. We talked prior to you coming onto the bench and agreed on a couple of instructions. And there are a couple of additional issues, and with the Court's permission Mr. Noland would like to discuss the United States Supreme Court of -- it is a Supreme Court case?

MR. NOLAND: Right.

MR. BORKAN: Of Manuel versus City of Joliet.

THE COURT: All right. Okay. Tell me.

MR. NOLAND: Judge, I, I made a copy for the Court. I've actually highlighted a couple of provisions while we've been on trial. A couple weeks ago the Supreme ruled in the Manuel versus City of Joliet case. And the case -- the cause of action at issue is whether or not there -- there's a cause of action for pretrial detention. And it was determined that under the Fourth Amendment there is a cause of action for pretrial detention.

My reading of the case, Your Honor, is that it, it looks like it is a game changer for this fabrication of evidence claim that the plaintiff has asserted. And I know we've been litigating it for a while and it was discussed in your summary judgment ruling, and we discussed it yesterday on the specific issue of whether or not the instruction should be as it is now, which was that the fabricated -- that evidence was used to deprive plaintiff of his liberty in some way. Or as the defendants had argued, it should be the evidence introduced against him at his trial.

We would submit, Judge, in the highlighted portions of the Manuel decision, I think it answers the question. The fabricated evidence -- a fabricated evidence claim, anything before trial is a Fourth Amendment claim. There is no Fourth Amendment claim asserted in this lawsuit. And so the only claim the plaintiff has is a fabricated evidence claim for the

trial based right. And as a result we think the instruction should be changed. Because of that one, one particular provision I think is apt is in footnote 8 on page 8 of 15 of the Lexis printout that I handed up.

And in footnote 8 it -- the Court gets into addressing Justice Alito's dissent. And it, it states in about the middle of page -- of the footnote 8 on page 8, it says, Nothing in the nature of the legal proceeding establishing probable cause makes a difference for purposes of the Fourth Amendment. Whatever its precise form, if the --

MR. BORKAN: Slow down, Dan.

MR. NOLAND: -- if the proceeding is tainted, as here, by fabricated evidence and the result is that probable cause is lacking, then the ensuing pretrial detention violates the confined person's Fourth Amendment rights for all the reasons we have stated. By contrast and contrary to the dissent's suggestion, see post at, once a trial has occurred, the Fourth Amendment drops out. A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the due process clause of the Fourteenth Amendment.

And then there's a few other highlighted provisions that went on the next page, on page 9 that -- on the copy of the case submitted. So because there is no Fourth Amendment -- and just for what happened in Manuel it ultimately is that the

Supreme Court remanded back to the Seventh Circuit in this decision, and the Seventh Circuit is charged with evaluating what the elements are of this Fourth Amendment claim. And it looks like the debate's going to be whether or not it's in the nature of a malicious prosecution, so it would have the malice element and probable cause element, and as well the favorable termination element. So that's going to be debated it looks like in that case because the statute of limitations is at issue.

None of that we think is in play here because there has been no Fourth Amendment claim asserted in this case. The only claim asserted is the fabricated evidence Fourteenth Amendment claim. That is not a pretrial right. That claim would be under the Fourth Amendment. We don't have that claim here. So we think the instructions accordingly -- and it also would affect some of the parties. For instance, Mr. Berti and Mr. Glinski we don't think would be subject to any of the federal claims because they weren't involved in the allegedly coerced confession and also the -- what they're alleged to have fabricated is that report that was written after the confession.

THE COURT: Okay.

MR. CHANEN: Judge, we don't think the case applies at all. What Mr. Noland just read was that once a trial has occurred, the Fourth Amendment drops out. A person challenging

the sufficiency of the evidence support of the conviction and any ensuing incarceration does so under the due process clause of the Fourteenth Amendment. This case is about a pretrial harm only. So what happens here is he's -- let me just explain, Judge. He's arrested. They put -- they charge him with drugs. They keep him in pretrial detention for four or five weeks. During that four or five weeks they tell a judge that the product that he was holding came back as narcotics, when, in fact, the tests came back not narcotics.

Ultimately they pri -- well before trial and, in fact, I think after seven weeks of improper detention, they dismiss the charges against him. Someone among the brass says we're not allowed to charge people for drugs when there are no drugs involved. Crazy concept, but that's what they conclude. And they dismiss the charges. This case is about whether harm in pretrial detention of this type falls under the Fourteenth Amendment or the due process or Fourth Amendment improper detention.

And if you read the whole thing in context, what they're saying -- and interesting, Judge, an interesting point about this. Every single circuit in the country said that that situation was under the Fourth Amendment except for the Seventh Circuit, which said the due process -- that it should be treated as a due process claim. So all the Supreme Court is doing in this opinion is bringing the Seventh Circuit in line

with the other circuits that say in that situation it's a Fourth Amendment, not a Fourteenth Amendment claim.

I do not read this case, Judge -- and I'm happy for you to take as much time as you want to look at it. But I do not read this case as in any way altering all the cases that we fought about, you know, on the summary judgment and that Your Honor ultimately ruled upon that say in essence there is now in the Seventh Circuit a due process claim for fabrication of evidence if the fabrication of evidence affects someone's liberty in some way.

So taking the Berti and Glinski example, they -- let's assume for sake of argument, and we don't know the jury will find this, that they fabricated a report saying they saw Deon out on the street at 9:30 and they did so intentionally knowing it was false. That affected his liberty in some way because that document was used as it was produced in discovery, produced to his lawyer, and his lawyer had to weigh all of the factors, Bruton and otherwise, on whether or not to bring in the fact that Daniel Taylor was in lockup at 10:00 o'clock or one minute to 10:00 o'clock. And, and Deon's lawyer had to make that decision.

So we would say even under this case we still have a Fourteenth Amendment claim and it still applies to Mr. Berti and Mr. Glinski for those reasons. And I think that's what you ruled in summary judgment more or less. And, and one other

thing I'll say, Judge, is this opinion, we never discussed it in summary judgment. And the reason we never discussed it in summary judgment is because it's about something completely different. It's about the pretrial diver -- pretrial rights that were violated.

MR. NOLAND: Just in response to that. The decision came out on March 21st, 2017, which is -- just another provision I would read to the Court on page 7.

THE COURT: Let me, let me just see if I understand the thrust of your argument. You're saying that this opinion changes this case in what way? How should -- how should it?

MR. NOLAND: Okay. The constitutional claim asserted and instructed should only be based on the trial and what was introduced against Mr. Patrick at the trial. That's how it changes it. Because everything else would relate to pretrial, which would be governed by the Fourth Amendment. It would be a Fourth Amendment claim. And that's, that's the argument. And I -- so what I think -- what the Supreme Court is doing is -- and in the Wallace case there had been the --

THE COURT: I understand what this case says, and I understand the difference. So break it down for me in this case. So what does that mean?

MR. NOLAND: That means that the instruction will say for the fabricated evidence claim that if there's fabricated evidence that was introduced against Mr. Patrick at his trial.

And for the fabricated evidence claim there would be no claim against, for instance, Berti and Glinski because that report was not introduced against him at his trial. And then it would also apply to some of the other defendants for whom had nothing to do with the confession, which was the evidence that was introduced against Mr. Patrick at his trial. It's a trial based right. The Fourteenth Amendment is a trial based right, and that's what -- that's how it affects the case.

MR. NOWINSKI: And obviously that would apply to ASA Fogarty as, as well since he did not -- anything that he is alleged to have fabricated was not used against Mr. Patrick.

MR. CHANEN: Your Honor, two, two points. One, for the reasons I've already stated --

THE COURT: Well, it seems to me that the question is to what extent does the -- to what extent does the record support a conclusion that because of the interlocking nature of the confessions and the various restrictions those confessions caused on the plaintiff's ability to present his case at trial --

MR. CHANEN: Your Honor --

THE COURT: -- to what extent does the record support a conclusion that these confessions and fabrications that were not used directly in his trial nevertheless impacted his trial to such an extent that it's not just a pretrial confinement issue? Do you want to address yourself to that?

MR. NOLAND: I -- well, go ahead.

MR. CHANEN: Judge, I just read it the other day. Mr. Patrick -- and I don't have it with me. I'm sorry. But Mr. Patrick goes into a lot of detail about this. He was on cross-examination from I believe Mr. Scahill, and he said something like you chose not to put in the Daniel Taylor in lockup evidence? And Mr. Patrick responds, Your Honor -- or responds, you keep calling it our choice. We really didn't have a choice. The judge had told us that if we bring in the evidence from the other people, that he'd let us drive a mack truck through it. And we had to make a decision whether to, to keep out the other six confessions or whether to try to argue that Daniel was in the lockup. But in the meantime, we had all this other evidence suggesting that Daniel wasn't in the lockup, or words to that effect.

And I'm happy to find the transcript page for Your Honor and get it to you sometime after today's hearing. But we think we've made a very clear case that it affected his Fourteenth Amendment rights at his trial that they put in all the, all the fabricated evidence. They, they were -- and, and there are other documents as well, Judge. There's, there's documents of the state showing that they had these witnesses on the witness stand who were going to argue that Daniel Taylor was out of the lockup. Those are, those are fabricated statements. And then they link to the trial by listing those

people on the state's trial witness list.

And in addition, Judge, we know that some of the fabricated evidence was turned over to John Theis. We know it was made part of discovery because it came up in his -- it was produced in his files. So we, we think we have, you know, made the case.

I also don't -- you know, again, Judge, two other things. One -- I think I've said this already, but we don't agree with that interpretation of Manuel versus Joliet. And two, Judge, when we pled this case and when you ruled on summary judgment, we did it based on the Seventh Circuit law at the time. What I think Mr. Noland is now arguing is that this Manuel versus City of Joliet case, which changes Illinois -- changes Seventh Circuit law in one respect, not in the respect -- I don't agree with him that it changes it to the extent he does. But even if it -- but it does on the pretrial claims.

He's just assuming it applies retroactively, and I just don't understand how on -- after all of the evidence has closed how we could now apply retroactively a Supreme Court case from March 21st and completely change Seventh Circuit law that applies to what the jury is about to be instructed, when every single proceeding up until today operated under then existing Seventh Circuit law. So that just doesn't make sense.

MR. NOLAND: That's why we're bringing it up this

morning before the jury is instructed. We thought it's certainly an appropriate time to talk about it once we, you know, reviewed it and bring it to the Court's attention. As to the Court's question, just, for instance, the example of Berti and Glinski. We don't think there's any, any evidence in the case that, that Deon Patrick did not do something at trial as a result of the Berti and Glinski report. We think that to the extent there's testimony about it, it would be --

THE COURT: Well, Berti -- Berti and Glinski made the case for Taylor in the lockup much less effective for anyone at trial. In fact, I think without Berti and Glinski I -- I'm not sure Taylor's, Taylor's even indicted. And given the interlocutory nature of the confessions, you have great doubt going all the way down the line. I mean, Berti and Glinski are the one solid piece of evidence that Taylor was not in the lockup at the time. They're the most solid piece of evidence, because their testimony comes from two police officers not involved in this investigation, not assigned to this homicide, working the streets on that night on something entirely different who ran into Taylor.

I mean, everyone else -- you know, Taylor himself and everyone else has some, some piece and some, some skin in the game. I don't see Berti and Glinski having any skin in this game. They didn't spend 15 hours interrogating these people. They didn't spend weeks and weeks working the case. It wasn't

one of their cleared and solved cases. I mean, if -- if I'm you guys, I mean, they're my -- they're my central argument as to why you can't believe the documents that Taylor was in the lockup. So I mean, they're, they're incredibly important in this trial.

Well, a couple of things occur to me. One of which is what, what prejudice is there to the defendants if we allow plaintiffs to amend their complaint to add the words Fourth Amendment? None of the facts change. And as far as I'm concerned, the instructions I would give on Fourth Amendment are the same ones I'm giving now.

MR. NOLAND: The Wallace case would bar any such claim under the statute of limitations.

THE COURT: I'm not so -- why? Why do you think so?

MR. NOLAND: Wallace discussed the Fourth Amendment claim for a pre-Gerstein detention and found that it accrued at the time of the Gerstein probable cause decision. And it also found that it was not tolled pending whatever was happening in the criminal process. The plaintiff would have had to have filed, according to Wallace, the claim at that time and that somebody could file a motion to stay, motion to dismiss, et cetera if they so chose at the time. But that argument was raised and rejected by Wallace as to -- as to tolling. So I do think that --

THE COURT: But this --

MR. NOLAND: -- applying Wallace here would, would bar this under statute.

MR. CHANEN: Your Honor.

THE COURT: But this, this -- this really -- well, I won't call it a new cause of action. But this law was not in effect at the time.

MR. CHANEN: Judge --

THE COURT: So, so I mean what would -- what would the Seventh Circuit say if there wasn't another avenue?

MR. CHANEN: Your Honor, the Seventh Circuit has also said I think very clearly that Heck -- that it's Heck tolled. That if the person does -- in other words, I think Mr. Noland in some ways by raising Wallace just made the point I was trying to make.

THE COURT: In addition to which, you know, the statute of limitations is an affirmative defense. But I don't think it's been pleaded here.

MR. BORKAN: No. Judge, if I can interject. You're absolutely right. As soon as you allow him to amend, then we plead the affirmative defense, then the Court has to rule on it.

THE COURT: That's the whole, that's the whole --

MR. BORKAN: I'm glad I can make you laugh.

MR. CHANEN: Your Honor, if I could just finish, just finish that one point. The Seventh Circuit's ruled pretty

clear that if someone goes forward with a trial and they are convicted, then Wallace is no longer the applicable law. Wallace is the applicable law for people who have Fourth Amendment claims, whose pretrial detention ends and then they don't go to trial. That's when their clock starts running. But if they go to trial, they get convicted, because their civil claim is reliant on disproving the conviction, Heck says that the period of time is tolled and you get the two years after the, the state moves to vacate your conviction, so --

THE COURT: Now, this would be fascinating if it weren't on the eve of closing arguments.

MR. NOLAND: I believe that actually Wallace has a lengthy -- I have it right here. It does discuss the arguments Mr. Chanen's raising, and I think they're rejected. It goes -- it has about a page or so talking about Heck. And he's right, it's a Fourth Amendment claim. That's what it appears that Manuel is saying, is that there's -- a pretrial detention claim is a Fourth Amendment claim under Wallace. That needs to be filed then.

MR. CHANEN: It --

THE COURT: Well, we're, we're going to go forward with the cause of action we've got before us. I think, you know -- you know, if I had -- if this had been raised at the final pretrial conference, but at this point in time the parties tried the case on the law as it was when we issued our

summary judgment ruling. And I suspect that if this -- if this should go up on appeal, at that point in time it would be a perfectly framed issue for the Seventh Circuit to decide all of these questions. I can see them deciding them in many different ways.

But at the very least what we have here is a situation in which the fabricated evidence that was not used directly during the trial certainly affected the trial substantially. That I don't have a problem with. And given that set of facts, I'm not sure that the, the City of Joliet case would really bar us going forward with the cause of action here. So on that alone I think we go forward. All the other issues are fascinating.

But given the way this particular case developed and the impact that the fabricated evidence that -- alleged fabricated evidence of Glinski and -- impacted the trial I think -- I don't think -- I'm not at all sure the City of Joliet would bar that cause of action.

MR. NOWINSKI: Judge, perhaps given the Court's ruling, then would, would it be proper to change the jury instruction to that the fabricated evidence used against plaintiff at trial, and it can be a question up to the jury of whether or not they believe these things were used, instead of that were used to deprive, deprive plaintiff of his liberty in some way?

MR. CHANEN: Judge, for all the reasons I've already stated we would oppose that. We don't think the Seventh Circuit --

THE COURT: I'm sorry. So, so you're proposing that we do what?

MR. NOWINSKI: Well, I -- just given, given the Court's ruling. So the instruction on the fair trial fabrication of evidence, claim two, there was discussion yesterday that the Court stated it would provide the language that was used to deprive plaintiff of his liberty in some way. Perhaps it should be go back to what the defendants had proposed, that the defendant you are considering knowingly fabricated evidence that was used against the plaintiff at his trial and then that's --

THE COURT: I don't think, I don't think Joliet requires that, though. I mean, I don't think it -- I don't think it requires that. I don't think that it -- I think what it tells you is if that evidence was -- solely impacted pretrial detention, then you may be out of the box. But it doesn't say it actually -- such evidence would have to be used at the trial if it impacted the trial, which is what, what we've been saying should be all along. Deprived and, and I say proximately caused the plaintiff to be damaged. So the jury is going to be finding that that fabricated evidence did exactly that.

MR. CHANEN: And that's exactly what you said yesterday, Judge. That the concern that Mr. Nowinski is expressing about having the jury decide whether they were affected, he can stand up and say the Berti and Glinski report never was admitted at the trial. And, therefore, there's no probable cause, and he can make that argument. And we can get up and say, you know, it influenced them. And, and maybe they'll win, maybe we'll win. But it doesn't -- you don't need to change the instruction from where you have it in order for the parties to get to this issue.

THE COURT: Well, I mean, that's -- it depends on how the Seventh Circuit's going to, to reconfigure the whole landscape. But my, my sense right now is that there is a possible clear avenue even applying the as yet unformulated new Fourth/Fourteenth Amendment distinction. There's still a clearer way for this case to be arguably one in which the pre -- the fabricated -- allegedly fabricated Taylor not in jail evidence impacted the trial sufficiently to have deprived him of his liberty.

I mean, I have no doubt in my mind that if I'm Mr. Theis, I would much much much rather try a case without that Taylor evidence than with it. I would much rather try a case where I don't have to worry about six other confessions impacting my client if I use one of my strongest pieces of, of evidence to show that the way the police say these things

happened couldn't have happened. So I'm, I'm going forward.

MR. NOLAND: Thank you, Judge.

MR. NOWINSKI: Thanks, Judge.

MR. BORKAN: Thank you, Judge.

THE COURT: I appreciate the presentation. It was, it was interesting in a sea of otherwise mostly uninteresting stuff.

MR. CHANEN: Believe me, Your Honor, we --

MR. BORKAN: Well, if I can just quickly dovetail.

MR. CHANEN: Well, I just want to make sure -- yes, you're going to one of the instructions?

MR. BORKAN: Well, because it actually segues perfectly. So you raised proximate cause. We submitted the proximate cause to I think your order box. And that, that takes us to the next issue in the case, which is short form versus long form. There is no federal pattern, so what we did was take from the --

THE COURT: Yes. Yes.

MR. BORKAN: -- Illinois Pattern 15.01. And the -- the updated short form uses a cause as opposed to that cause. I know, Judge Guzman, you are very familiar with that. Plaintiff would like to submit the long form. I would submit that the long --

THE COURT: No, I'm not going to do that. I'm not going to do that. I'm not going to use the long form of

## CLAIM II: FAIR TRIAL – FABRICATION OF EVIDENCE

Plaintiff claims that defendants violated his right to a fair trial by fabricating evidence that was used to convict plaintiff in the criminal case. To succeed on this claim, plaintiff must prove each of the following things by a preponderance of the evidence:

1. The defendant you are considering knowingly fabricated evidence that was introduced against plaintiff as his criminal trial.

2. The evidence was material.

3. Plaintiff was damaged as a result.

Fabricated evidence is "material" if there is a reasonable probability that the result in the criminal proceeding would have been different if the evidence had been disclosed.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must find for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any one of these things by a preponderance of the evidence, then you must find for Defendant, and you will not consider the question of damages.

**Defendants' Proposed Instruction No. 32**

_______ Given

_______ Rejected

_______ Withdrawn

_______ Objected to

Source: Seventh Circuit Proposed Revised § 1983 Instructions 7.14 (modified to account for multiple defendants)

## FABRICATION OF EVIDENCE

Plaintiff claims that all the Defendants violated his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution by fabricating evidence against him. To succeed on this claim against any of the Defendants, Plaintiff must prove each of the following propositions by a preponderance of the evidence:

1. The Defendant you are considering knowingly fabricated false evidence or participated in fabricating false evidence;
2. That evidence was used to deprive Plaintiff of his liberty in some way;
3. The fabricated evidence proximately caused Plaintiff to be damaged.

If you find that Plaintiff has proven these propositions as to the Defendant you are considering, then you should find in favor of Plaintiff on this claim and against that Defendant and go on to consider the question of damages

If, on the other hand, you find that Plaintiff has failed to prove any of these propositions by a preponderance of the evidence against the Defendant you are considering, then you should find for that Defendant and not consider the question of damages as to that Defendant on this claim.

## APPENDIX CERTIFICATE

I certify that all of the materials required by Seventh Circuit Rule 30(a) and (b) are included in the attached appendix or this separate appendix.

/s/ Ruth F. Masters
Ruth F. Masters, Attorney

## CERTIFICATE OF SERVICE

I certify that I filed the attached Separate Appendix of Defendants-Appellants electronically via the CM/ECF system on February 22, 2019. All counsel of record in this appeal are registered CM/ECF users and thus will be served electronically via the CM/ECF system on February 22, 2019.

/s/ Ruth F. Masters
Ruth F. Masters, Attorney