No. 18-2759

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

DEON PATRICK,

Plaintiff-Appellee,

v.

CITY OF CHICAGO, ANTHONY VILLARDITA, THOMAS JOHNSON, RICK ABREU, TERRY O'CONNOR, SEAN GLINSKI, and MICHAEL BERTI,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 14 cv 3658
The Honorable Ronald A. Guzman, Judge Presiding

**REPLY BRIEF OF DEFENDANTS-APPELLANTS**

MARK A. FLESSNER
Corporation Counsel
of the City of Chicago
BENNA RUTH SOLOMON
Deputy Corporation Counsel
MYRIAM ZRECZNY KASPER
Chief Assistant Corporation Counsel
Chicago, Illinois 60602
(312) 744-7764

.

RUTH F. MASTERS
MASTERSLAW
7061 W. North Avenue, # 296
Oak Park, Illinois 60302
(708) 445-8031
Special Assistant Corporation Counsel

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 18-2759
Short Caption: Patrick v. City of Chicago, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

City of Chicago, Anthony Villardita, Thomas Johnson, Rick Abreu, Terry O' Connor, Sean Glinski, Michael Berti

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Reiter Burns LLP
Borkan & Scahill, Ltd,
Dykema Gossett PLLC
Masters Law (Seventh Circuit only)

(3) If the party or amicus is a corporation:
i) Identify all its parent corporations, if any; and

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

Attorney's Signature: / s / Ruth F. Masters　　Date: June 14, 2019
Attorney's Printed Name: Ruth F. Masters

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d). Yes

Address: Masters Law, 7061 West North Avenue, #296, Oak Park, IL 60302
Phone Number: 708-445-8031
E-Mail Address: rmasters@ruthmasterslaw.com

**TABLE OF CONTENTS**


**TABLE OF AUTHORITIES**.......... ii

**ARGUMENT**.......... 1

**I. PATRICK SHOULD HAVE BEEN SANCTIONED FOR PERJURY.** .......... 2

**II. ADMISSION OF PATRICK'S COI WARRANTS A NEW TRIAL.** .......... 8

**III. DEFENDANTS ARE ENTITLED TO A NEW TRIAL BASED ON CUMULATIVE ERROR.** .......... 14

**IV. VILLARDITA, JOHNSON, BERTI, AND GLINSKI ARE ENTITLED TO JUDGMENT OR A NEW TRIAL ON THE FABRICATION CLAIM.** .......... 15

**A. Defendants Are Entitled To JNOV On Fabrication.** .......... 15

**B. Villardita, Johnson, Berti, and Glinski Are Alternatively Entitled To A New Trial On Fabrication.** .......... 19

**V. BERTI AND GLINSKI ARE ENTITLED TO JUDGMENT ON THE FAILURE TO INTERVENE AND CONSPIRACY COUNTS, OR THEY AND THE OTHER DEFENDANTS ARE ENTITLED TO A NEW TRIAL ON THOSE COUNT**.......... 21

**A. Berti And Glinski Are Entitled To Judgment On Failure To Intervene And Conspiracy.** .......... 21

**B. Alternatively, Berti, Glinski, Villardita, Johnson, O'Connor, And Abreu Are Entitled To A New Trial On Failure To Intervene And Conspiracy Because Of The Error In The Fabrication Instruction.** .......... 22

**CONCLUSION**.......... 25

## TABLE OF AUTHORITIES

**Cases**

Armstrong v. Daily,
786 F.3d 529 (7th Cir. 2015) ..... 17

Avery v. City of Milwaukee,
847 F.3d 433 (7th Cir. 2017) ..... 16, 17

Cairel v. Alderden,
821 F.3d 823 (7th Cir. 2016) ..... 16

Cefalu v. Villages of Elk Grove,
211 F.3d 416 (7th Cir. 2000) ..... 22

Coleman v. City of Peoria, Illinois,
No. 18-1742,
2019 WL 2240575 (7th Cir. May 24, 2019) ..... 16, 19

Doornbos v. City of Chicago,
868 F.3d 572 (7th Cir. 2017) ..... 8

Dotson v. Bravo,
321 F.3d 663 (7th Cir. 2003) ..... 3

Dye v. Wargo,
253 F.3d 296 (7th Cir. 2001) ..... 6

Escamilla v. Jungwirth,
426 F.3d 868 (7th Cir. 2005),
abrogated on other grounds by,
McQuiggin v. Perkins,
569 U.S. 383 (2013) ..... 6

Faigin v. Kelly,
184 F.3d 67 (1st Cir. 1999) ..... 12

Fields v. Wharrie,
740 F.3d 1107 (7th Cir. 2014) ..... 18

Fisher v. Krajewski,
873 F.2d 1057 (7th Cir. 1989) .......... 12

Fuery v. City of Chicago,
900 F.3d 450 (7th Cir. 2018) .......... 3

Glickenhaus & Co. v. Household International, Inc.,
787 F.3d 408 (7th Cir. 2015) .......... 24

Lewis v. City of Chicago,
914 F.3d 472 (7th Cir. 2019) .......... 15

Makiel v. Butler,
782 F.3d 882 (7th Cir. 2015) .......... 2,14

Manuel v. City of Joliet,
137 S. Ct. 911 (2017) .......... 15

Martin v. Milwaukee County,
904 F.3d 544 (7th Cir. 2018) .......... 18

Montaño v. City of Chicago,
535 F.3d 558 (7th Cir. 2008) .......... 4, 5

Nipper v. Snipes,
7 F.3d 415 (4th Cir.1993) .......... 13

People v. Shelton,
929 N.E.2d 144 (Ill. App. Ct. 2010) .......... 10

Ramirez v. T & H Lemont, Inc.,
845 F.3d 772 (7th Cir. 2016) .......... 3

Regains v. City of Chicago,
918 F.3d 529 (7th Cir.),
as amended on denial of reh'g (Apr. 17, 2019) .......... 15

Richman v. Sheahan,
358 F. App'x 682 (7th Cir. 2009) .......... 9

Rivera v. Frake,
767 F.3d 685 (7th Cir. 2014) .......... 6

Schultz v. Thomas,
832 F.2d 108 (7th Cir. 1987) ... 12

Secrease v. Western & Southern Life Insurance Co.,
800 F.3d 397 (7th Cir. 2015) ... 3

Thomas v. General Motors Acceptance Corp.,
288 F.3d 305 (7th Cir. 2002) ... 3

United States v. Bradford,
905 F.3d 497 (7th Cir. 2018) ... 10

United States v. McKinney,
954 F.2d 471 (7th Cir. 1992) ... 22

U.S. Steel, LLC, v. Tieco, Inc.,
261 F.3d 1275 (11th Cir. 2001) ... 13

Whitlock v. Brueggemann,
682 F.3d 567 (7th Cir. 2012) ... 16

Wipf v. Kowalski,
519 F.3d 380 (7th Cir. 2008) ... 9

**Other Authorities**

Fed. R. Civ. P. 37(c) ... 2

Fed. R. Civ. P. 60 ... 2

Fed. R. Evid. 103 ... 9

735 ILCS 5/-702(d) ... 10

Seventh Circuit Pattern Jury Instructions, § 1983 Instruction 7.14 ... 19

## ARGUMENT

The judgment cannot stand. Patrick committed perjury that the district court found undermined the very administration of justice, and he should have been sanctioned for it. Beyond that, the trial was fraught with prejudicial error – from the admission of Patrick's COI, which told the jury that another judge had already determined Patrick was innocent of the murders – to an instruction that allowed Patrick to recover on his due process claim on a theory the Supreme Court rejected in Manuel. As we explain below, Patrick's response largely fails to confront our arguments.[1]

At the outset, the court should disregard certain statements in Patrick's response. He repeatedly asserts the jury was aware of certain facts, but for support, he cites documents that were not in evidence or testimony that was not given at trial. These include Patrick Br. 13 (citing R. 164-41, a summary judgment exhibit); id. at 16 (citing PTX 66; no such exhibit is in the record); id. (citing PSOF 87, Patrick's statement of facts at summary judgment); id. at 16, 57 (citing DTX298-P111:3-15, testimony from Patrick's criminal trial, which was excluded, see R. 392 at 175-76); Patrick Br. at 16, 57 (citing Dkt. 357-7, which is not evidence the jury heard but is Patrick's opposition to defendants' directed verdict motions).[2]

---

[1] We cite our opening brief as "Opening Br.," and adopt the same citation format for the brief's appendices and exhibits in the record. We cite the "Brief and Supplemental Appendix of Plaintiff-Appellee" as "Patrick Br."

[2] Patrick also refers several times to PTX 12, which is not in the record. That material appears at R. 514, DE 2.

The court should also disregard Patrick's assertion that the jury "saw many pieces of evidence that Villardita and Johnson purposely withheld from the police file (thus, never given to prosecutors and therefore, never given to defense counsel)." Patrick Br. 15. That assertion lacks citation and ignores that the district court granted summary judgment for defendants on his Brady claims. R. 208 at 28-30. Thus, assertions about material never given to prosecutors are irrelevant.

## I. PATRICK SHOULD HAVE BEEN SANCTIONED FOR PERJURY.

In blistering findings, the district court determined that Patrick repeatedly perjured himself on material issues in a manner that transcended this case and implicated the very administration of justice. A11-A19. As we explain, Opening Br. 37-43, those findings demanded a sanction, including dismissal. The court's failure to sanction Patrick was an abuse of discretion.

In response, Patrick does not discuss these findings, let alone dispute them. He focuses on Fed. R. Civ. P. 60, even though we do not argue in this court that sanctions should have been awarded under that rule. Contrary to Patrick's assertion, Patrick Br. 24-25, defendants sought relief below from Patrick's perjury pursuant to Fed. R. Civ. P. 37(c) and the court's inherent authority, R. 405 at 1-5, see also A11 (district court opinion acknowledging alternative bases for sanctions). Although defendants also pursued relief under Rule 60, they were not required to also raise that ground on appeal. Indeed, this court has admonished appellants to make a "careful selection of just a few issues on appeal." E.g., Makiel v. Butler, 782 F.3d 882, 897 (7th Cir. 2015). Further, Patrick cites no authority, nor are we aware

of any, for his proposition that Rule 60 standards of review apply to motions based on Rule 37 and inherent authority.

Likewise, defendants preserved their request for a sanction other than dismissal or a new trial. Patrick Br. 36 n.3; R. 405 at 1, 24. Regardless, where dismissal is inappropriate, the court is required to consider lesser sanctions. Secrease v. W. & S. Life Insurance Co., 800 F.3d 397, 402 (7th Cir. 2015); Dotson v. Bravo, 321 F.3d 663, 668-67 (7th Cir. 2003).

Patrick correctly observes that defendants have not challenged the district court's findings regarding prejudice to them from Patrick's perjury, Patrick Br. 19-24, but his contention that this waives any right to pursue sanctions, id. at 25-28, is wrong. This court has squarely held that "[a]lthough part of a court's consideration should be on the impact or effect that the conduct had on the course of the litigation, there is no requirement that the district court find prejudice." Fuery v. City of Chicago, 900 F.3d 450, 464 (7th Cir. 2018). Patrick misreads our brief to claim that we cite Fuery and Dotson as cases where the court has ordered sanctions without a prejudice finding. Patrick Br. 26-27. And while Patrick attempts to distinguish Thomas v. General Motors Acceptance Corp., 288 F.3d 305 (7th Cir. 2002), and Ramirez v. T & H Lemont, Inc., 845 F.3d 772 (7th Cir. 2016), Patrick Br. 24-25, these cases, along with Secrease v. Western & Southern Life Insurance Co., 800 F.3d 397 (7th Cir. 2015), stand precisely for the proposition for which we cite them:

they are cases where the court imposed sanctions for perjury without a finding of prejudice. Opening Br. 41-42.[3]

Patrick also contends that his lies were not material, and that our arguments to the contrary are "unsupported." Patrick Br. 28, 29. This disregards Patrick's own theory of the case and the district court's findings. Perjury is false testimony given with willful intent that concerns a material issue. Montaño v. City of Chicago, 535 F.3d 558, 564 (7th Cir. 2008). Patrick admitted that he intentionally lied, Opening Br. 28-30 – and he does not contend otherwise on appeal. These lies were material. He lied in a 1999 affidavit about witnessing Taylor's arrest, therefore supporting Taylor's alibi, and by extension, his own. He sought post-conviction relief using that affidavit, A18, and then lied in his deposition in this case, R. 519, Patrick Dep. 163-65, about intentionally lying in his affidavit, R. 381 at 11. False testimony going to Patrick's guilt or innocence was plainly material.

And with respect to Patrick's lies regarding Hardy, the district court explicitly rejected Patrick's immateriality argument:

> To the extent Plaintiff had sworn testimony that someone else was present in the apartment on the night of the murders who could be implicated in the killings, it is material to Plaintiff's contention that he was innocent; indeed, it is highly unlikely he would have included Mixon's statements with respect to Hardy's presence or even mentioned Hardy were it immaterial to the relief he was seeking in his post-conviction petitions.

[3] Patrick discusses the district court's decision in Seacrese, Patrick Br. 26-27, but that does not address our argument, which relies on this court's opinion.

A15. Patrick notes that defendants acknowledged that he withdrew his 2004 petition for post-conviction relief, which had relied on Mixon's false affidavit implicating Hardy. Patrick Br. 30. But he ignores, as defendants also pointed out, that Patrick subsequently attached the same false Mixon affidavit to his successful 2013 petition to vacate his conviction, and referenced it in his successful COI petition. Opening Br. 27, 39-40, 45. For these reasons, Montaño, which Patrick claims is analogous, Patrick Br. 29-31, is distinguishable. In Montaño, the court found inconsistencies between witnesses' depositions and trial testimony, which amounted merely to impeachment opportunities. 535 F.3d at 564-66.

Similarly, Patrick's accusation that we "leap to the unsupported conclusion that [his] misconduct rose to the level of willful abuse of the district court's processes," Patrick Br. 29, blatantly disregards the district court's findings:

> It is clear, however, that Plaintiff's conduct goes beyond "mere" lying. When asked by defense counsel why he lied at his deposition, Plaintiff's response is, frankly, chilling in its implications for our system of justice: "Because you don't work for me and you're with them." With this unfiltered response, Plaintiff makes clear that he felt free – indeed entitled – to lie during this litigation simply because the person asking the question did not "work for him."

A16. And, of course, because Patrick does not even acknowledge the court's findings that his lies were material and willful, he cannot establish that the court abused its discretion in reaching them.

Patrick's next arguments – that his lying about some things does not mean he lied about everything, that it was the role of the jury to assess credibility, and that sanctions were not warranted because defendants had "unclean hands,"

Patrick Br. 30-36 – do not address the court's failure to sanction based on the impact of Patrick's conduct on the integrity of the judicial process. Although a party's lie about one issue does not necessarily mean he lied about everything, id. at 30-32, this court has also explained that a court should not "credit statements made by a litigant such as [plaintiff] who trumpets a willingness (indeed, asserts an entitlement) to lie under oath whenever deceit serves his interests." Escamilla v. Jungwirth, 426 F.3d 868, 870 (7th Cir. 2005), abrogated on other grounds by McQuiggin v. Perkins, 569 U.S. 383 (2013); accord Dye v. Wargo, 253 F.3d 296, 298 (7th Cir. 2001). That describes Patrick, who could not rule out having made other untruthful statements:

> Q. Is this part of that sentence [about seeing Taylor's arrest] the only time that you've ever presented untruthful information in support of any attempt to get out of prison?
> A. I don't know. I would have to see what you're talking about.

R. 381 at 9. This fairly admits other lies were entirely possible. And Patrick's justification for lying about Hardy – that defense counsel did not work for him, A16 – also leaves open the possibility of other lies with respect to anything defense counsel wanted to know.

Further, the jury's role in assessing credibility is not a substitute for the court's separate and broader duty to impose sanctions to protect the integrity of the judicial process. "If perjury pays benefits when it escapes detention, but has no cost when detected, there will be far too much perjury and the accuracy of judicial decisions will be degraded." Rivera v. Frake, 767 F.3d 685, 687 (7th Cir. 2014). The court's findings, for instance, that Patrick's willingness to lie in discovery was

"wholly inconsistent with any court's ability to dispense justice," A19, and "chilling in its implications for our system of justice," A16, are precisely why sanctions are warranted independent of whether defendants suffered prejudice.

Moreover, Patrick's "unclean hands" argument is that defendants' testimony, where it is contrary to the verdict, was perjurious, but there is no authority for that proposition, and Patrick cites none. Patrick Br. 35. Additionally, his example of defendants' supposed perjury – that Villardita purposely misrepresented the age range McCoy provided of the suspects as 20-25 instead of 24-25 in furtherance of a conspiracy to frame Taylor, age 17; Patrick, age 20; and Matthews, age 22, id. at 33-34 – does not advance his argument. There is no evidence that Villardita's statements were anything other than slight misstatements by a person giving testimony from memory.

And Patrick's attempt to establish subornation of perjury regarding Villardita's testimony, Patrick Br. 34-35, seriously misrepresents the record. The transcript shows only that defense counsel misspoke while reading from an exhibit published to the jury, R. 376 at 13 (granting request to publish exhibit). He had previously correctly stated that McCoy provided an age range of 24-25:

> Q. And the following is a description that she gave. "Number one**,** male black, 24-25, 5'8" to 5'10", 150 to 160 pounds, wearing long cloth black coat, three-quarter length." Is that what that is?
> A. That's what it means, yes.
> Q. "Black skull cap"?
> A. Yes.
> Q. "And dark complexion." That's the first person? That's number one?
> A. Yes.

***
Q. And there is further descriptions here. "Number two, male black, 20 to 25, 5'8" to 5'10"."
MR. CHANEN: I'm sorry, your Honor. Mr. Borkan must have mistakenly misread it. It's 24 to 25.
MR. BORKAN: Isn't that what I said? 24 to 25?
MR. CHANEN: No, you said --
MR. BORKAN: Male black, <u>24 to 25</u>.
MR. CHANEN: No. Mr. Borkan stated 20 to 25, Judge.
THE COURT: Well, we're agreed on what it says now; right?
MR. BORKAN: Right.
THE COURT: So proceed.
MR. BORKAN: Yeah, I think the jury can see it too. We will certainly blow it up.

<u>Id.</u> at 25-26 (emphasis added). It is frivolous to describe this as suborning perjury.

In sum, regardless of how defendants responded to Patrick's perjury, failing to sanction Patrick sends a message that perjury is costless. Defendants are entitled to dismissal or a new trial, or a remand for determination of a different sanction.

## II. ADMISSION OF PATRICK'S COI WARRANTS A NEW TRIAL.

Patrick's COI had minimal probative value, while its admission was extraordinarily prejudicial because it enabled Patrick to support his claims of innocence with a judicial proclamation to that effect. Opening Br. 43-48. Admission of the COI was reversible error and defendants are entitled to a new trial.

Patrick contends that defendants waived their challenge to admission of the COI by not discussing it more thoroughly in their post-trial motion. Patrick Br. 36-38. He relies on <u>Doornbos v. City of Chicago</u>, 868 F.3d 572, 579 (7th Cir. 2017), <u>see</u> Patrick Br. 37, but <u>Doornbos</u> sets forth the standard of review on appeal; it does not address, let alone establish, an obligation to raise challenges to evidentiary rulings

in a post-trial motion. And again, no such requirement exists. Opening Br. 48 n.8 (citing Fed. R. Evid. 103; Wipf v. Kowalski, 519 F.3d 380, 385 (7th Cir. 2008); Richman v. Sheahan, 358 F. App'x 682, 683 (7th Cir. 2009)).

Admissibility of COI's is an issue of first impression in this court, as Patrick acknowledges, Patrick Br. 40, yet he relegates his response to our arguments regarding the probative value of the COI to a footnote, id. at 41-42 n.5. We set forth multiple reasons the COI lacked probative value of any significance: it was issued without an adversarial hearing; the governing statute does not contemplate admission of COIs in other litigation; the statute prohibits third parties from intervening in a COI proceeding; Patrick's petition was weak and misleading; and the CCSAO's assertion of the deliberative process privilege precluded discovery of its reason for taking no position on the petition. Opening Br. 44-47. Patrick does not respond to any of these points on the merits. He asserts that district courts in other cases have addressed our arguments, yet he does not set forth the reasoning of those courts, Patrick Br. 41-42 n.5; see also id. at 40 (asserting without discussion that other district courts have found COIs to be probative of favorable termination element of malicious prosecution claim or damages). He therefore fails to establish a proper exercise of discretion.

Nor does Patrick dispute our argument that representations in his petition were inaccurate or misleading. Opening Br. 45. Instead, he defends the issuance of a COI by saying that the same judge issued a COI to Taylor on the same day, implying that the judge knew enough from Taylor's petition to grant Patrick's.

Patrick Br. 41-42 n.5. That is illogical and contrary to the COI statute. Whatever the contents of Taylor's COI petition – which is not even in the record – Patrick was required to present an accurate petition presenting his own case for innocence. 735 ILCS 5/2-702(d) (requiring verified petition). Patrick's related argument that the judge presiding over the COI could check a court file for documents to which Patrick's COI apparently referred, Patrick Br. 41-42 n.5, is unavailing for the same reason – Patrick's petition needed to be complete. In addition, a court is not obligated to scour the court file, e.g. People v. Shelton, 929 N.E.2d 144, 156 (Ill. App. Ct. 2010), and there is no way of knowing if that happened.

In addition, there was no adversarial hearing on the COI. Such a hearing could have highlighted the flaws in Patrick's petition, and Patrick would have had a chance to address them; the court could then have rendered its decision based upon an accurate presentation of the relevant facts. But the CCSAO took no position on Patrick's petition, and defendants were barred by state statute from intervening. Consequently, Patrick's COI was issued without any testing of its accuracy and his entitlement to a COI. For this reason as well, the COI had limited probative value.

Patrick also erroneously claims that "once [d]efendants made it clear" they would put Patrick's innocence at issue, Patrick Br. 39, the COI had "substantial probative value," id. at 41, and had defendants only conceded Patrick was innocent, then the COI "would have had relatively limited probative value," id. (citing United States v. Bradford, 905 F.3d 497 (7th Cir. 2018). But the district court ruled pre-trial that Patrick's innocence was at issue because of the favorable termination

element of his malicious prosecution claim, SA7, and, indeed, Patrick's theory on all his claims was that he was innocent and framed by police. Whether the jury would believe him on that was key.

As the district court observed pre-trial: "[I]n this case your client's {Patrick's] veracity is the entire case. Whether the jury believes him or believes the police officers is what this case is going to be about to a very, very great extent." R. 506 at 29. Patrick's counsel acknowledged that "the whole issue of his guilt or innocence has pervaded the trial." R. 390 at 19. The court agreed: "Proof of innocence has been an issue in this trial since day one." Id. at 20. And, notably, Patrick does not dispute that he could have attempted to show he was innocent with evidence less inflammatory than the COI. Opening Br. 47. Further, defendants' unwillingness to concede innocence did not give the COI "substantial probative value." Patrick Br. 41. That assertion mistakenly assumes the COI proved Patrick's innocence, but as we explain, the manner in which the COI was issued meant its probative value on the issue of innocence was practically non-existent.

Similarly, the court's belief that the COI was probative of innocence was based upon sheer speculation that the CCSAO did not oppose issuance because it believed Patrick was innocent:

> So the question is, what pieces of evidence out there are there that, when the state's attorney's office nolle prossed this case, it's because they thought the defendant was innocent, not because witnesses had died, they couldn't prove the case up. Not because evidence had been lost. Not because for political reasons. But because they believed the defendant was innocent. This seems to me, regardless of what the statute says, or its purpose, an opportunity for the state's attorney's office to have stepped up and said: No, we don't think he is innocent.

> He shouldn't get a certificate of innocence. And instead of doing that, they sat on their hands.

SA7. But the CCSAO took no position on the COI, and shrouded that decision in the deliberative process privilege. It was not for the court to guess the reasons.[4]

Finally, admission of the COI was unfairly prejudicial. Patrick criticizes defendants' reliance on Faigin v. Kelly, 184 F.3d 67 (1st Cir. 1999), for the proposition that a jury is likely to give significant deference to judicial findings, Patrick Br. 42, 46, and claims not to have found similar cases, id. at 46. In fact, many other cases reach this same conclusion. For example, in Schultz v. Thomas, 832 F.2d 108 (7th Cir. 1987), the district court in a civil rights case allowed a criminal court judge to testify about his findings in the plaintiff's disorderly conduct case, and admitted the criminal court's decision into evidence. Id. at 109-10. This court ordered a new trial, holding that this evidence "so unavoidably overlapped the jury's role in assessing the credibility of the key witness as to unfairly prejudice the defendants by denying them the right to have a jury decide the facts which formed the claims against them." Id. at 110; see, e.g., Fisher v. Krajewski, 873 F.2d 1057, 1064 (7th Cir. 1989) (upholding exclusion of ruling against defendant in a different case because it would undermine jury's role as factfinder and "unfairly prejudice [defendant] in denying him the right to have a fair and impartial jury decide the

---

[4] Arguments on other motions in limine reflected that the CCSAO did not turn over some exculpatory evidence to Patrick's attorneys until 2012 or 2013, R. 515 at 11-12, 24-26, and that portions of CCSAO's file related to Patrick's trial had been missing since 2002, id. at 38-41. Thus, the record shows that there were any number of plausible reasons other than innocence why the CCSAO did not take a position on the COI.

facts"); see also, e.g. U.S. Steel, LLC, v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001) (admission of opinion from prior case caused substantial prejudice under Rule 403 and was reversible error); Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir.1993) (same). Patrick cites the general proposition that juries can be expected to follow instructions regarding the weight of evidence, Patrick Br. 44-45, but that does not overcome settled authority to the contrary when the evidence is a judicial finding.

U.S. Steel is particularly instructive because there, counsel in closing argument urged the jury that it should read the judge's opinion to resolve credibility questions about the plaintiff's witnesses. 261 F.3d at 1288. That is similar to Patrick's argument that jurors should be "outraged and incensed" and "show [what] the value is of a piece of paper that says you're actually innocent." R. 392 at 145. Patrick asserts that defendants' objection to this comment at a sidebar immediately following the comment was too late, Patrick Br. 43, but he does not explain why. Nothing prevented the court from curing this improper comment by sustaining the objection and informing the jury of that. Regardless, defendants unquestionably preserved their argument against admission of the COI based on unfair prejudice in their motion in limine.

Patrick's innocence was a central dispute at trial, and the COI unfairly put a judicial stamp of approval on Patrick's side. Admission of the COI was not harmless, and defendants are entitled to a new trial on all claims because of its admission.

## III. DEFENDANTS ARE ENTITLED TO A NEW TRIAL BASED ON CUMULATIVE ERROR.

The COI, which unfairly bolstered Patrick's credibility, and Patrick's comments inciting the jury to decide the matter on an emotional basis, together caused prejudice that warrants a new trial. Opening Br. 49-51. Patrick argues waiver because our cumulative error argument is narrower on appeal and purportedly relies upon errors not raised below. Patrick Br. 47-49. But neither point has merit. As the court recognized, A32, the cumulative error argument below was based on all errors raised in the post-trial motion. R. 403 at 24. This included golden rule violations, id. at 14-16 (one of which Patrick admitted), and the COI, id. at 25.[5] Because appellants are not obliged to raise all errors on appeal, e.g., Makiel, 782 F.3d at 897, defendants may pursue a cumulative error argument based on a subset of errors they advanced below.

Patrick dismisses defendants' argument about the importance of credibility in this case by asserting that all trials turn on credibility. Patrick Br. 50-52. That downplays the repeated acknowledgements by court and counsel, which we have set forth above, that Patrick's credibility was central here. And while Patrick asserts that the jury "overwhelmingly concluded that Patrick was credible on the core issues notwithstanding" his perjurious statements, id. at 51, this only proves defendants' point about the influence of a judicial declaration of innocence that

---

[5] Patrick admitted the following violated the golden rule: "'What's someone's life worth? If I offered you money to give up the last 21 years of your life – how much would it take? How much would it take? How much would it take to miss your kids from ages 1 to 22 growing up?'" R. 426 at 30, quoting R. 392 at 56-57.

buttressed Patrick's credibility and counsel's improper requests to the jury to put themselves in Patrick's position.

Defendants are entitled to a new trial based on cumulative error.

## IV. VILLARDITA, JOHNSON, BERTI, AND GLINSKI ARE ENTITLED TO JUDGMENT OR A NEW TRIAL ON THE FABRICATION CLAIM.

Patrick continues to insist that under the Fourteenth Amendment, he can recover for harm caused by fabricated evidence never introduced at his criminal trial. But his argument is based on overruled precedent, and the record contains no evidence to support a verdict in his favor on his Fourteenth Amendment claim. Accordingly, Villardita, Johnson, Berti, and Glinski are entitled to JNOV, or, in the alternative, a new trial on fabrication.

### A. Defendants Are Entitled To JNOV On Fabrication.

Manuel v. City of Joliet, 137 S. Ct. 911 (2017), overruled this circuit's precedent holding that fabrication of evidence claims seeking recovery for pre-trial detention were governed by the Fourteenth Amendment's Due Process Clause:

> The Supreme Court held that the initiation of formal legal process following an arrest does not convert a Fourth Amendment unreasonable-seizure claim "into one founded on the Due Process Clause." [Manuel,] 137 S. Ct. at 919. The injury of wrongful pretrial detention may be remedied under § 1983 as a violation of the Fourth Amendment, not the Due Process Clause. To the extent Hurt [v. Wise, 880 F.3d 831 (7th Cir. 2018),] holds otherwise, it is overruled.

Lewis v. City of Chicago, 914 F.3d 472, 479 (7th Cir. 2019); accord Regains v. City of Chicago, 918 F.3d 529, 536 (7th Cir.), as amended on denial of reh'g (Apr. 17, 2019).

Manuel thus recognizes a distinction between Fourth and Fourteenth Amendment claims for harm caused by use of fabricated evidence. Although use of that evidence to effectuate pre-trial detention will state a Fourth Amendment claim, that use will not also state a Fourteenth Amendment claim. Instead, to establish causation for a due process violation, evidence must be used at trial to convict. Opening Br. 52-53 (discussing Avery v. City of Milwaukee, 847 F.3d 433, 442 (7th Cir. 2017); Cairel v. Alderden, 821 F.3d 823, 831 (7th Cir. 2016); Whitlock v. Brueggemann, 682 F.3d 567, 581-82 (7th Cir. 2012)). See also Coleman v. City of Peoria, No. 18-1742, 2019 WL 2240575, at *6 (7th Cir. May 24, 2019) ("Using false evidence to convict violates a defendant's right to a fair trial guaranteed by the Fourteenth Amendment's Due Process Clause."). Juries, after all, can only convict based upon the evidence they consider.

The due process instruction given here allowed the jury to find liability if fabricated evidence was used "to deprive [Patrick] of his liberty in some way." SA 50. That swept too broadly for a post-Manuel due process claim. It allowed Patrick to argue, R. 392 at 50-55, and the jury to find, due process liability based upon evidence that may have caused pre-trial detention but was never introduced at trial to convict. Claims for that type of harm now fall squarely under the Fourth Amendment, not the Fourteenth. Patrick had only a Fourteenth Amendment claim, so he was limited to recovering for harm cased by the introduction of fabricated evidence at trial to convict.

For this reason, Patrick's reliance upon overruled precedent for the proposition that the phrase "deprived of liberty in some way" properly defines a due process violation, Patrick Br. 54-58, should be rejected. The phrase deprivation "in some way" was used in those cases to encompass pre-trial harm, which is no longer permissible for a due process claim. Moreover, consistent with his theory, Patrick improperly urged the jury in closing to rely on evidence not introduced at trial, R. 392 at 50-55, when that evidence could not legally support a due process fabrication of evidence claim. Thus, this court should reject Patrick's claim that this instructional error was harmless. Patrick Br. 58-65.[6] Accordingly, the fabrication verdict cannot stand.

In defense of the instruction, Patrick posits that other types of due process claims do not require evidence to be introduced at trial to convict. Patrick Br. 56. But different types of claims necessarily have different elements of proof. In Brady and Youngblood claims, which Patrick references, id., by definition, the evidence is not available for use at trial.

Further, the cases Patrick cites confirm that jury consideration of falsified evidence is necessary to establish a fabrication due process claim. See Avery, 847 F.3d at 439, 442 (finding that falsified evidence was used at trial to convict); Armstrong v. Daily, 786 F.3d 529, 553 (7th Cir. 2015) ("We have observed, for

[6] Patrick's similar contention that defendants were not prejudiced by the instruction, Patrick Br. 59 (citing A23-A24), references a ruling regarding the wording of the causation requirement that defendants do not challenge on appeal.

example, that an accused has no claim against an officer who fabricates evidence and puts the evidence in a drawer, never to be used."); Fields v. Wharrie, 740 F.3d 1107, 1114 (7th Cir. 2014) (summarizing cases where fabricated evidence was introduced at the defendant's criminal trial and stating, "if the evidence hadn't been used against the defendant, he would not have been harmed by it, and without a harm there is, as we noted earlier, no tort.").

Defendants are entitled to JNOV because a properly instructed jury could not have found for Patrick.[7] The only allegedly fabricated evidence introduced at Patrick's criminal trial was his confession, and the jury found in favor of O'Connor and Magats, whom Patrick accused of the fabrication. Opening Br. 14-16, 53 (citing R. 380 at 94-99, R. 381 at 155-64).

Patrick's assertion that he "pled and proved" that Villardita and Johnson were "the ringleaders, in the fabrication of the confessions, including his own," Patrick Br. 63, and his digression into other pieces of evidence, including the Berti and Glinski GPR, id. at 63-64, are sideshows. On review of the denial of JNOV, the pleadings are irrelevant and the non-movant is entitled only to reasonable inferences in his favor. E.g., Martin v. Milwaukee County, 904 F.3d 544, 550 (7th Cir. 2018). It is not a reasonable inference that others fabricated Patrick's confession when he identified only O'Connor and Magats as having done so. And for

---

[7] Patrick labels defendants' argument an "insufficiency of the evidence argument" and claims we do not provide a standard of review, Patrick Br. 61-62, but we do, see Opening Br. 52.

Fourteenth Amendment purposes, the existence of other fabricated evidence never introduced at his criminal trial is irrelevant.

Further, Patrick's claim that the jury heard the McCoy lineup report was used at his criminal trial to impeach McCoy is unsupported by his citations, Patrick Br. 16, 57, 59, 62, nor are we aware of any support for this. Patrick cites R. 380, which is his testimony that his confession was the only evidence at his criminal trial linking him to the crimes; DTX 298, which is a volume of testimony from his criminal trial that was not moved into evidence, R. 392 at 174-75 (rejecting Patrick's request to move the transcript into evidence); and R. 357-7, which is his opposition to defendants' directed verdict motions. Thus, the McCoy lineup report, even if fabricated, also provides no basis for Fourteenth Amendment liability. For these reasons, Villardita, Johnson, Berti, and Glinski are entitled to JNOV on fabrication.

### B. Villardita, Johnson, Berti, and Glinski Are Alternatively Entitled To A New Trial On Fabrication.

Patrick dismisses as "nitpicky," Patrick Br. 60, Villardita's, Johnson's, Berti's, and Glinski's argument that the jury should have been instructed to consider whether any fabricated evidence was material, Opening Br. 56-57, echoing the district court's view that if the evidence affected his liberty in any way, it was necessarily material, Patrick Br. 60. That is not correct. "Materiality" means "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Coleman, 2019 WL 2240575, at *10 (emphasis added) (citations omitted). Accord Seventh Circuit Pattern Jury

Instructions, § 1983 Instruction 7.14, "Concealment Of Exculpatory Evidence / Fabrication Of Evidence." Thus, to the extent that Patrick seeks to recover for his conviction, he was required to show that the evidence was material to his conviction, and not to some other deprivation of his liberty. And, as we explain, evidence that was not introduced at trial could not be material to his conviction. Opening Br. 56-57.

Patrick argues that the omission was harmless, Patrick Br. 60-61, but he does not explain this. He does not expressly rely on his theory below that unintroduced fabricated evidence affected his trial strategy, R. 380 at 146, 152-53, R. 382 at 20-23, but to the extent that this is his theory, Patrick Br. 56, 63-65, it makes clear why materiality was a critical element. Patrick – for unrelated reasons – did not introduce his own alibi evidence at his criminal trial; he believed the state's case was so weak that he would be acquitted even without that evidence. R. 380 at 154. Any jury considering the effect of unintroduced fabricated evidence on the criminal trial should be required to consider whether that effect was material in light of Patrick's own choice not to use other evidence available to him, including his own alibi. For these reasons, Villardita, Johnson, Berti and Glinski are alternatively entitled to new trial on fabrication with a jury instructed on materiality.

## V. BERTI AND GLINSKI ARE ENTITLED TO JUDGMENT ON THE FAILURE TO INTERVENE AND CONSPIRACY COUNTS, OR THEY AND THE OTHER DEFENDANTS ARE ENTITLED TO A NEW TRIAL ON THOSE COUNTS.

Patrick does not dispute that both failure to intervene and conspiracy require an underlying constitutional violation. As we explain, there is no underlying fabrication violation for which any defendant can be held liable. Opening Br. 58. This, as well as the fact that Berti and Glinski became involved only after Patrick's confession was obtained, entitles them to judgment on failure to intervene and conspiracy. Alternatively, all defendants are entitled to a new trial on these claims.

### A. Berti And Glinski Are Entitled To Judgment On Failure To Intervene And Conspiracy.

The failure to intervene instruction required a defendant to know that another defendant "was about to unconstitutionally coerce the Plaintiff into providing a self-incriminating statement, or fabricate evidence against the Plaintiff." R. 369 at 33. Berti and Glinski, who became involved on December 14, could not have intervened to prevent coercion of Patrick's December 4 confession. And Patrick's assertion that the jury could have found Berti and Glinski "liable for failure to intervene when Villardita and Johnson asked them to fabricate a police report," Patrick Br. 69, also fails. The GPR, however, was not introduced at Patrick's trial and therefore could not deny Patrick due process. Accordingly, alleged fabrication of the GPR cannot supply the underlying constitutional violation for liability for failure to intervene.

Patrick's argument that Berti and Glinski could have joined a conspiracy, Patrick Br. 68-69, similarly ignores that under the instructions the conspiracy was limited to defendants who "formed an agreement to (a) coerce Plaintiff's confession; or (b) fabricate evidence that was intended to deprive plaintiff of his liberty." R. 369 at 34. As we explain above, there is no underlying fabrication on which to base a conspiracy finding. And Berti and Glinski could not have joined a conspiracy to coerce Patrick's confession because any conspiracy ended once Patrick's confession was obtained. A conspiracy ends once its goal is accomplished. E.g., United States v. McKinney, 954 F.2d 471, 475 (7th Cir. 1992) (holding that a conspiracy to murder ended with the murder). Additionally, Patrick did not bring a claim for conspiracy to cover-up the coercion of his confession, so his suggestion that Berti and Glinski could be liable on such a claim is unavailing. In any event, that claim would not be actionable because Patrick knew the facts regarding how his confession was obtained. A conspiracy to cover up wrongdoing is not actionable in such circumstances. E.g., Cefalu v. Villages of Elk Grove, 211 F.3d 416, 423-24 (7th Cir. 2000).

For these reasons, Berti and Glinski are entitled to JNOV on failure to intervene and conspiracy.

### B. Alternatively, Berti, Glinski, Villardita, Johnson, O'Connor, And Abreu Are Entitled To A New Trial On Failure To Intervene And Conspiracy Because Of The Error In The Fabrication Instruction.

In the alternative, Berti and Glinski, as well as Villardita, Johnson, O'Connor, and Abreu, are entitled to a new trial on failure to intervene and

conspiracy. As we explain, the jury was instructed that it could find liability on failure to intervene and conspiracy if it found a defendant liable for either fabrication of evidence or coercion of Patrick's confession. Opening Br. 59. Fabrication cannot be the predicate offense to a finding of failure to intervene and conspiracy because the fabrication instruction was itself erroneous, tainting that predicate verdict. Id. Because the failure to intervene and conspiracy verdicts might rest on a legally invalid theory – fabrication – they cannot stand. Id. at 59-60.

Patrick responds that the underlying offense for Villardita, O'Connor, and Abreu is coerced confession and the verdicts can be affirmed on that basis alone. Patrick Br. 65. The validity of the predicate offense of coercion, however, does not eliminate the possibility that the jury rested the failure to intervene and conspiracy verdicts entirely upon the invalid fabrication verdict.

Patrick also argues that our failure to intervene and conspiracy arguments are "moot" because "even if the Court were to find error with respect to one or more counts against one or more individual defendants, such individual error would be harmless as long as any single count against that defendant was upheld." Patrick Br. 66; see id. at 60-61. That is wrong.

To begin, even if other defendants remain liable for damages, success for Berti and Glinski on fabrication, failure to intervene, and conspiracy would absolve them of all liability and require judgment in their favor.

In addition, a finding that any defendant is not liable or is entitled to a new trial on any count is significant because it can affect the assessment of punitive damages. Opening Br. 57, 59 (citing Glickenhaus & Co. v. Household International, Inc., 787 F.3d 408 (7th Cir. 2015)). Patrick observes that Glickenhaus concerned allocation of liability, not punitive damages, Patrick Br. 68 n.8, but its rationale plainly applies by analogy. A jury assessing punitive damages could well award those differently depending on the claims on which a defendant is liable. For example, it could believe an officer who fails to intervene bears less culpability for purposes of punitive damages than an officer who coerces a confession. In other words, the extent of a defendant's wrongdoing obviously matters.

## CONCLUSION

For these reasons, defendants request that this court dismiss the complaint, grant a new trial, or remand for reconsideration of a sanction against Patrick for committing perjury. If the court orders a sanction short of dismissal or a new trial, then the erroneous admission of the COI or cumulative error alternatively entitle defendants to a new trial on all claims. And regardless of the sanction and COI rulings, Villardita, Johnson, Berti, and Glinski are entitled to judgment, or alternatively, a new trial, on fabrication. Berti and Glinski are also entitled to judgment on failure to intervene and conspiracy. Villardita, Johnson, O'Connor, and Abreu, along with Berti and Glinski if they are not awarded judgment in their favor, are entitled to a new trial on failure to intervene and conspiracy.

Respectfully submitted,

MARK A. FLESSNER
Corporation Counsel
of the City of Chicago

/s/ Ruth F. Masters
BY: RUTH F. MASTERS
Special Assistant Corporation Counsel
MastersLaw
7061 West North Avenue, #296
Oak Park, Illinois 60302
(708) 445-8031

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(B)(i) and CIRCUIT RULE 32(c)

In accordance with Fed. R. App. P. 32(a)(7)(C)(i), I certify that the Reply Brief of Defendants-Appellees complies with the type-volume limitation set forth in Fed. R. Civ. P. 32(a)(7)(B)(i) as modified by Seventh Circuit Rule 32(c), because it contains 6519 words, beginning with the word "ARGUMENT" on page 1 and ending with the words "Respectfully submitted" on page 25. In preparing this certificate, I relied on the word count of the word-processing system used to prepare the brief, which was Word 2016.

/s/ Ruth F. Masters

## CERTIFICATE OF SERVICE

I certify that I filed the attached Reply Brief of Defendants-Appellants electronically via the CM/ECF system on June 14, 2019. All counsel of record in this appeal are registered CM/ECF users and thus will be served electronically via the CM/ECF system on June 14, 2019.

/s/ Ruth F. Masters
Ruth F. Masters, Attorney